# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RAMON DE PAZ-SALVADOR | : | CIVIL NO. 3:10-CV-2668 |
| --- | --- | --- |
| Petitioner, | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| RONNIE HOLT, WARDEN, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

**I.     Introduction**

This case presents questions concerning the calculation of credit for time served by a federal prisoner, and invites us to examine the interplay of state and federal sentences in this calculation, along with considering the extent to which a federal prisoner may receive credit against his federal sentence for time spent in immigration detention awaiting removal from the United States. The Petitioner, a federal prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case, which calculated credit due to the Petitioner for time spent in immigration custody, as well as time spent serving various state sentences. In the course of these proceedings, in response to a court order directing the Bureau of Prisons to re-examine its calculation of credit for time during which the

1

Petitioner was awaiting detention, the United States has revised its sentence credit calculation, giving Paz-Salvador credit for an additional three weeks during which he was detained by immigration officials in anticipation of criminal charges.

We have now reviewed this revised sentence credit calculation. Having conducted this review, we find no error in the revised calculation, which properly allocates the time previously served by the Petitioner between his various state and federal sentences, as well as his immigration detention. Therefore, we recommend that this petition for writ of habeas corpus be denied.

## II. Statement of Facts and Case

### A. The Initial Sentence Credit Calculation for Paz-Salvador

The Petitioner, Ramon De Paz-Salvador, is a Mexican national and convicted felon, who is currently serving a 77-month sentence for illegal re-entry by a previously deported alien. The Petitioner's case calls upon us to examine the role of state and federal sentences, and immigration detention pending deportation, in the sentence credit process. In this case the interplay of state and federal sentences, and immigration detention, which form the basis for this sentence credit calculation began on June 14, 2008, when local authorities in Georgia arrested Paz-Salvador and charged him with the state offenses of aggravated assault and criminal trespass. (Doc. 7, Kelly Decl. Ex. 1 ¶ 4.) At the time of this arrest, police also apparently identified Paz-

Salvador as a state probation violator. Accordingly, on June 20, 2008, De Paz-Salvador was sentenced to a 120-day prison term for a probation violation.

De Paz-Salvador was then subsequently sentenced by the state in March of 2009 to a nine-month term of incarceration for his conviction of simple assault and criminal trespass. (Id., ¶ 5; Email Communication from Sheriff's Office, Athens County, Georgia Attach. A). State authorities converted the sentence to a term of 270 days, with a start date of June 14, 2008. (Id.) According to state officials, De Paz-Salvador actually satisfied this sentence on October 27, 2008. (Id.) Much of the subsequent confusion regarding sentence calculations in this case seems to stem from these initial state proceedings. This confusion is understandable, since the state proceedings concluded in an unusual fashion. Thus, a state sentence was imposed upon Paz-Salvador in March, 2009, before he was turned over to federal officials. State officials then provided the Petitioner with extensive credit against that sentence, resulting in the state sentence being immediately fully satisfied. Indeed, as we understand it, the sentence imposed by the Georgia court in March, 2009, was given retroactive effect and was actually deemed fully satisfied by the time served by Paz-Salvador through October 27, 2008. The government's response to this petition for writ of habeas corpus does not shed further light on these curious state sentencing practices.

De Paz-Salvador was then released from state custody to the custody of officials for the Bureau of Immigration and Customs Enforcement ("ICE") on March 16, 2009.

3

(Id., Kelly Decl. Ex. 1 ¶ 6; Email Communication from ICE Attach. B.) While this immigration detention was initially undertaken for the sole purpose of conducting deportation proceedings, (Doc. 10, Supplemental declaration of Michael S. Romano Ex. 1 ¶ 3; Declaration of Sonya Lewis Attach. 1 ¶ 3), on April 3, 2009, the criminal investigation component of ICE initiated criminal charges against De Paz Salvador for illegal re-entry by a deported alien. De Paz-Salvador was then charged criminally with illegal re-entry to the United States by a previously deported alien on April 23, 2009. (Doc. 7, Kelly Decl. Ex. 1 ¶ 7; Federal Indictment Attach. C.) Thereafter, he was taken into the custody on this federal criminal charge on May 4, 2009. (Doc. 7. Kelly Decl. Ex. 1 ¶ 8; USMS Individual Custody and Detention Report Attach. D).

On October 28, 2009, Paz-Salvador was sentenced in the United States District Court for the Middle District of Georgia, to a seventy-seven month term of imprisonment after he entered a guilty plea to the illegal re-entry charge. (Doc. 7, Kelly Decl. Ex. 1 ¶ 9; Judgment in a Criminal Case, 3:09-CR-00018-001-CAR Attach. E.) At the time of this federal sentencing it is evident that there remained some lingering confusion caused by the initial state disposition of Paz-Salvador's state cases. Thus, the federal sentencing transcript reveals that there was uncertainty as to whether, and to what extent, Paz-Salvador was detained by state or federal officials between the date of his arrest and the date of sentencing. (Doc. 7, Sentencing Transcript Ex. 2 at 9-10.) In this regard, the criminal judgment and the sentencing

4

transcript both reflect that the sentencing judge ordered Paz-Salvador's federal sentence to run "concurrently to the sentence that *you are currently serving* under Clarke County, Georgia Superior Court Docket number SU-CR-1712," plainly suggesting some uncertainty concerning whether Paz-Salvador had completed these state sentences. (Id., Sentencing Transcript Ex. 2 at 10 emphasis added.) However, with respect to this issue of sentence credit, the federal sentencing judge also repeatedly deferred to the Bureau of Prisons in conducting this sentence credit calculation, twice stating that the issue of credits toward this federal sentence was to be determined by the Bureau of Prisons. (Id.)

This confusion extended beyond Paz-Salvador's sentencing to the Bureau of Prisons' calculation of his sentence credit. In fact, the Bureau of Prisons has conducted two separate sentence credit calculations in this case. At the outset, the Bureau of prisons initially calculated the sentence for Paz-Salvador to commence on the date it was imposed, October 28, 2009. (Doc. 7, Kelly Decl. Ex. 1; Public Information Inmate Data Attach. F at 3.) Paz-Salvador then received credit for 328 days of prior time served, for the periods of October 28, 2008, through March 16, 2009, time when he was initially held by state authorities. Since this period of state detention was not credited against Paz-Salvador's state sentence by state authorities, it was applied by the Bureau of Prisons against Paz-Salvador's federal sentence. In addition, the Bureau of Prisons credited Paz-Salvador for the period from April 23, 2009, through October

27, 2009, when the Petitioner was in federal custody awaiting sentencing on this federal charge. (Doc. 7, Kelly Decl. Ex. 1 ¶ 10; Public Information Inmate Data Attach. F.) However, the Bureau of Prisons did not initially credit Paz-Salvador for the five-week period from March 16, 2009, through April 23, 2009, when the Petitioner was in immigration custody pending deportation. The Bureau of Prisons initially denied Paz-Salvador any credit for this period of time because, as a general rule, immigration detention is not considered time in "official detention" pending criminal charges for purposes of calculating prior custody credit under 18 U.S.C. §3585. (Doc. 7, Kelly Decl. Ex. 6 ¶ 6; Program Statement 5880.28, Sentence Computation Manual, Attach. B.)

### B. The Filing of This Habeas Corpus Petition and the Re-Calculation of Paz-Salvador's Sentence Credit

Dissatisfied with this sentence credit calculation, on December 30, 2010, Paz-Salvador filed this petition for writ of habeas corpus. (Doc. 1.) In his habeas corpus petition, the Petitioner advanced a different sentencing credit computation, arguing that the Bureau of Prisons ("BOP") incorrectly computed his federal sentence by not providing him federal credit for the time he spent in state custody prior to his federal sentencing, and by not allowing him credit for the time spent in immigration detention pending deportation. (Id.)

On January 24, 2011, the Respondents filed a response to this petition which defended the initial sentence credit calculation undertaken in this case by the Bureau of Prisons. (Doc. 7.) In part, this response argued that Paz-Salvador was not entitled to any credit for the period of detention from March 16 through April 23, 2009, when he was held in immigration custody pending deportation, because the Bureaus of Prisons "Program Statement 5880.28, Sentence Computation Manual states– Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in 'official detention' pending criminal charges. (See Ramirez-Osorio v. INS, 745 F.2d 937, rehearing denied 751 F.2d 383 (5th Cir. 1984); Shoaee v. INS, 704 F.2d 1079 (9th Cir. 1983); and Cabral-Avila v. INS, 589 F.2d 957 (9th Cir. 1978), cert. denied 440 U.S. 920, 99 S. Ct. 1245, 59 L.Ed.2d 472 (1979)." (Id. at 9.)

Three days later, on January 27, 2011, this Court asked the government to re-examine this issue, noting that "this Court has held that prisoners like this Petitioner who are being held in immigration custody in anticipation of a federal indictment for illegal re-entry are entitled to credit for the time period during which immigration officials held them awaiting indictment. Galan-Parades v. Hogsten, No. 06-1730, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007)." (Doc. 9.) In response to this request, the

Respondents have now submitted a second, revised sentence credit calculation for Paz-Salvador. This revised calculation notes, in part, that:

> A Deportation Officer for ICE informed agency counsel that De Paz Salvador was indeed taken into custody for the sole purpose of deportation proceedings on March 16, 2009. See Supplemental Declaration of Michael S. Romano (Ex. 1) ¶ 3; Declaration of Sonya Lewis (Attach. 1) ¶ 3. On April 3, 2009, the criminal investigation component of ICE initiated criminal charges against De Paz Salvador for illegal re-entry, and therefore, on that date, the purpose of his detention changed to pending criminal prosecution.

(Id. at 3.)

Given this change in Paz-Salvador's detention status on April 3, 2009, from detention-for-deportation to detention-pending-criminal-prosecution, federal officials revised the sentence credit calculation for the Petitioner in the following manner:

> Consequently, the BOP's Designation Sentencing and Computation Center has credited De Paz-Salvador's sentence for the period of April 3, 2009 through April 22, 2009, the day before he was indicted on federal charges because, during that period of time, the immigration officials detained him for the purpose of criminal prosecution.

(Id., at 4.)

With this latest revision of its sentencing credit calculation, this petition has now been fully briefed by the parties (Docs. 1, 7, 10 and 14) and is ripe for resolution. For the reasons set forth below, it is recommended that the petition be denied, since the Bureau of Prisons' revised sentencing credit calculation accurately calculates the

sentence credit that Paz-Salvador is entitled to receive on the facts of this case in accordance with the law which governs such credits.

### III. Discussion

#### A. Sentence Credit Calculations–Guiding Principles

This petition for writ of habeas corpus invites this Court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who was serving both state and federal sentences, and was the subject of immigration detention. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed: " 'Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F.Supp. 618, 621 (M.D.Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by federal prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

Chambers v. Holland, supra, 920 F.Supp. at 621.

However, as the Supreme Court has recognized, United States v. Wilson, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two questions which lie at the heart of this habeas petition: first, when did Paz-Salvador's sentence commence; and, second, to what extent may Paz-Salvador receive credit for any time already spent in custody?

With respect to the first of these questions regarding when a petitioner's sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990). As a result, a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F. App'x 591, 592-93 (3d Cir. 2009).

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent the defendant may receive credit for any time already spent in custody against his federal sentence. In this regard, we begin with the proposition that a prisoner may not receive: "credit for time spent

in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor, 309 F. App'x at 593.

It is also clear that a prisoner is not entitled to credit against a federal sentence for time spent solely in civil or administrative immigration custody pending deportation. Courts uniformly agree that, since §3585 only allows credit for time spent in "official detention" on criminal charges, "time spent in ICE custody awaiting the outcome of removal proceedings is not time in official detention that must be credited under section 3585(b)(1) to a federal sentence imposed on a conviction that occurs subsequent to a petitioner's civil detention or custody by ICE." Galan-Paredes v. Hogsten, No. 06-1790, 2007 WL 30329, *2 (M.D.Pa. Jan. 3, 2007)(citing Ghadiri v. Sniezek, 2006 WL 3023034 (N.D.Ohio); Alba-Tovar v. United States, 2006 WL 2792677 (D.Or.); Guante v. Pugh, 2005 WL 3867597 (S.D.Ga.)(Nangle, J.); and Fletcher v. Pugh, 2004 U.S. Dist. Lexis 29450 and 29451 (S.D.Ga.)(Bowen, J.). See also, United States v. Ifeoluwa, 238 F.App'x 895 (3d Cir. 2007); United States v. Jaymes, 07-108, 2010 WL 93695 (D.R.I. Jan. 8, 2010).

This general rule admits of one exception, however. Prisoners like this Petitioner who are being held in immigration custody in anticipation of a federal indictment for illegal re-entry are entitled to credit for the time period during which

12

immigration officials held them awaiting indictment, rather than removal. See e.g., Reyes-Ortiz v. Schultz, No. 08-6386, 2009 WL 4510131 (D.N.J. Dec. 1, 2009); Galan-Parades v. Hogsten, No. 06-1730, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007); Guante v. Pugh, No. 305-92, 2005 WL 3867597 (S.D. Ga. Dec. 2, 2005).

### B. Paz-Salvador's Sentence Credit Has been Appropriately Calculated

Judged against these legal benchmarks, we find that the revised sentencing credit calculation for this Petitioner properly credits him for the time which he has spent both in state custody and in immigration detention. In this case it is undisputed that Paz-Salvador commenced his sentence for the federal immigration offense on the date it was imposed, October 28, 2009. This is undeniably the correct starting point for Paz-Salvador's sentence since "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F. App'x 591, 592-93 (3d Cir. 2009).

At the time that he was sentenced for this federal offense, Paz-Salvador had already been sentenced in state court for other crimes. In connection with these prior state sentences, Paz-Salvador received credit against his state sentences for the time he spent in custody from June, 2008, through October 29, 2008. Since Paz-Salvador received credit for this time in prison against his state sentences he was not entitled

13

to further credit for this period of imprisonment against his federal jail sentence. Indeed, it is well settled that Paz-Salvador may not receive such: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor, 309 F. App'x at 593.

The Bureau of Prisons, however, credited Paz-Salvador for the time he spent in state custody from October 29, 2008, to March 16, 2009, time in custody which had not been credited against any state sentence, thus paying full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Furthermore, the Bureau of Prisons credited Paz-Salvador for the time he spent in pre-trial detention on this federal charge from April 23, 2009, until he was sentenced on October 27, 2009.

Finally, while the Bureau of Prisons initially erroneously denied Paz-Salvador any credit for the period he spent in immigration custody from March 16, 2009, through April 23, 2009, it has now corrected this error, crediting this prisoner with the time he was held by immigration officials pending federal indictment, the period from April 3, 2009, through April 22, 2009, the day before he was indicted on federal

charges. In taking this action, the Bureau of Prisons has followed the dictates of the law, which provides that prisoners who are being held in immigration custody in anticipation of a federal indictment for illegal re-entry are entitled to credit for the time period during which immigration officials held them awaiting indictment. See e.g., Reyes-Ortiz v. Schultz, No. 08-6386, 2009 WL 4510131 (D.N.J. Dec. 1, 2009); Galan-Parades v. Hogsten, No. 06-1730, 2007 WL 30329 (M.D. Pa. Jan. 3, 2007); Guante v. Pugh, No. 305-92, 2005 WL 3867597 (S.D. Ga. Dec. 2, 2005).[1]

In sum, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of jail time credit, the Bureau

---

[1] In his traverse the Petitioner argues that the government has not complied with Galan-Parades, or this Court's January 27 order (Doc.9), and suggests that he should, therefore, receive sentencing credit back to the moment of his initial arrest by local authorities in June of 2008. (Doc. 14.) We disagree. The government's supplemental response in this case (Doc. 10) directly addresses the issue identified in Galan-Parades, and noted by us in our January 27 order, the sentence calculation dilemma that arises when an immigration detainee also comes under criminal scrutiny. That response is supported by a sworn declaration which sets forth the date upon which the Petitioner first fell under criminal scrutiny by immigration officials. (Id.) The government then credited the Petitioner for three additional weeks spent in immigration custody while awaiting indictment. (Id.) This is all that Galan-Parades required of the United States.

of Prisons closely followed both the spirit and the letter of the law. Consistent with case law, it declined to credit Paz-Salvador for time that was already credited against his separate state sentence, but ensured that he received full credit against his federal sentence for jail time which he served that had not been credited against another sentence. It further ensured that the Petitioner received credit for time spent in immigration detention awaiting indictment, while properly declining to award credit for time held in immigration custody solely for deportation purposes. Thus, this federal jail time credit calculation provided Paz-Salvador with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time." Id.

Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides the Petitioner all the credit he is entitled to receive, this petition for writ of habeas corpus should be denied.[2]

---

[2]Paz-Salvador also suggests that he is entitled to credit for the time spent in state custody from June through October 2008, prior to imposition of his federal sentence. The difficulty with this proposition is that it is both legally and factually inappropriate. It is legally inappropriate because a federal sentence cannot run concurrently to a states sentence which had concluded prior to the imposition of the federal prison term. It is further inappropriate factually because nothing in the record of these federal sentencing proceedings suggests that the federal district court in Georgia intended such a result, something the court could have easily achieved through the application of Section 5G1.3 of the Sentencing Guidelines.

## IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

Since the Petitioner's argument on this score effectively invites us to revise another federal judge's sentence, we should decline this invitation. Instead, if Paz-Salvador believes that this sentence should be reviewed, he should invite the court that imposed the sentence to re-examine it by filing a petition with the sentencing court under 28 U.S.C. § 2255.

17

Submitted this 1st day of March, 2011.

                                          ***S/Martin C. Carlson***
                                          Martin C. Carlson
                                          United States Magistrate Judge